**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HOSPITALITY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>SAM 939 LLC d/b/a MAXI'S, SAMUEL ARBITMAN, DeANDRE HOPSON, and JAQUELINE DONLAN,<br><br>Defendants. | CIVIL ACTION<br><br>No. 25-cv-6582-JMY |
| SAM 939 LLC d/b/a MAXI'S and SAMUEL ARBITMAN,<br><br>Third-Party Plaintiffs,<br><br>v.<br><br>A. ROBERT SARACINO and JOHN P. MEEHAN AGENCY, INC.,<br><br>Third-Party Defendants. | |

**MEMORANDUM**

**Younge, J.** **August 26, 2026**

This action arises from a one-car automobile accident that occurred in the early morning hours of January 26, 2024, in Marcus Hook, Pennsylvania. Jacqueline Donlan was driving her Mitsubishi Mirage, and DeAndre Hopson was riding in the front passenger seat. Both were intoxicated and were leaving a local bar called Maxi's at about 2:39 a.m. After driving approximately four blocks from Maxi's, Donlan crashed her vehicle into a traffic pole. Hopson suffered various injuries including a displaced hip fracture, and sued Donlan, Maxi's, and its

owner, Samuel Arbitman, for damages in state court (the "Hopson Lawsuit"). Hospitality Insurance Company ("HIC"), Maxi's liability insurance carrier, stepped up to provide a defense in the Hopson Lawsuit.

But there was a problem. The $2 million liquor liability policy (the "HIC Policy") that Maxi's held with HIC listed its closing time as midnight, but Maxi's kept the lights on until at least two in the morning. Maxi's had secured the policy through the Meehan Agency ("Meehan") and its employee, Robert Saracino. Saracino prepared and submitted to HIC a policy application that included the inaccurate midnight closing time and, purportedly, Arbitman's signature. Arbitman denies signing the insurance policy application and, for its part, HIC denies that it would have issued the policy had it known that Maxi's closed at two o'clock in the morning.

HIC brought this lawsuit seeking a declaratory judgment that the HIC Policy is void and that HIC has no duty to defend or indemnify Maxi's and Arbitman in the Hopson litigation (the "HIC Lawsuit"). In turn, Maxi's and Arbitman (the "Third-Party Plaintiffs") sued Saracino and Meehan (the "Third-Party Defendants") for fraud, demanding "full indemnification and/or contribution for all losses, damages, fees, attorneys' fees and costs" related to the Hopson and HIC Lawsuits.

Before the Court is Third-Party Defendants' Motion to Dismiss Third-Party Plaintiffs' complaint against them. (ECF No. 31). For the reasons set forth below, Third-Party Defendants' motion is **DENIED**.[1]

---

[1] The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f).

## I. BACKGROUND

### A. Facts[2]

In 2020, Sam 939 LLC—a bar and restaurant known to the public as Maxi's—opened its doors in Marcus Hook. (Third-Party Complaint, ECF No. 19 ¶¶ 11, 12). Since that time Maxi's managing owner, Samuel Arbitman, has worked with the Meehan Agency and its employee, Robert Saracino, "to obtain and maintain the [bar's] General Liability and Liquor Liability policies." (*Id.* ¶¶ 13–16). On March 28, 2023, Saracino was doing just that when he requested a policy quote from HIC, this action's original Plaintiff. (*Id.* ¶ 25).

Saracino had had some trouble securing a 2023–24 liquor liability policy for Maxi's. Earlier in the month, the Specialty Insurance Agency ("SIA") had declined to cover Maxi's because its "hours of operations [were] unacceptable." (*Id.* ¶ 22). Maxi's opened at seven in the morning, SIA said, and "serv[ed] alcohol for 19 hours a day [until 2 a.m.] six days a week . . . [n]ot an exposure we want." (*Id.*)

Saracino tried a different tack. The unsigned insurance application he submitted to HIC on March 28 "indicated that [Maxi's] earliest open hour was noon, and its latest open hour was midnight." (*Id.* ¶ 25). An HIC underwriter asked Saracino to clarify, since Maxi's website listed a 2 a.m. closing time on Fridays and Saturdays. (*Id.* ¶¶ 26, 27). Saracino said he would "confirm closing midnight" with HIC and, later that day, did just that. (*Id.* ¶¶ 28, 29). Saracino told HIC that Maxi's would correct the hours on its website and sent Arbitman a message to "change hours to closing at midnight." (*Id.* ¶¶ 29, 30).

---

[2] Third-Party Plaintiffs bring their Third-Party Complaint "to the extent that the allegations in HIC's [original] complaint are correct." (ECF No. 19 ¶ 72). The Court therefore accepts HIC's factual allegations, as set forth in Third-Party Plaintiffs' complaint, as true for purposes of this motion to dismiss. *See Injective Labs Inc. v. Wang*, 2023 WL 3318477, at *1 n.1 (D. Del. May 9, 2023).

On April 5, 2023, Saracino submitted Maxi's fully completed and executed liquor liability application to HIC, representing that Maxi's would open no earlier than noon and close no later than midnight. (*Id.* ¶ 31). HIC alleges that Arbitman digitally signed the application on Maxi's behalf; Arbitman denies doing so. (*Id.* ¶¶ 32, 71). HIC subsequently issued a liquor liability policy to Maxi's for $1 million per occurrence and $2 million total, for one year beginning on April 9, 2023. (*Id.* ¶ 35). CF No. 35).

On the night of January 25–26, 2024, Jacqueline Donlan and DeAndre Hopson were out drinking at Maxi's. (*Id.* ¶¶ 41, 42). Donlan was drunk and looked it: "she exhibited signs of intoxication and impairment such as slurred speech, unsteady gait, and glassy eyes." (*Id.* ¶ 41). Nevertheless, it is alleged that Maxi's staff continued to serve her alcohol and, when she left the bar at about 2:39 in the morning, didn't ask how she planned to get home. (*Id.*). She got behind the wheel of her Mitsubishi Mirage and, with Hopson in the passenger seat, drove for about four blocks before slamming into a traffic pole. (*Id.*).

Hopson was seriously hurt, suffering a displaced hip fracture that required surgery along with other injuries. (*Id.*). On September 13, 2024, he sued Donlan, Maxi's and Arbitman for damages in state court, the kind of lawsuit for which HIC would normally defend and indemnify Maxi's. (*Id.* ¶ 40). But HIC noticed that Hopson claimed he was at Maxi's after two that morning, and Arbitman confirmed to HIC on October 11 that Maxi's stayed open until two on Fridays and Saturdays. (*Id.* ¶¶ 42, 43). Later, during HIC's investigation of misrepresentations in the insurance application, Arbitman said under oath that Maxi's closed at two every night of the week. (*Id.* ¶ 46–52).

### B. Procedural History

On November 21, 2025, HIC brought this action against Maxi's, Arbitman, Hopson, and Donlan, seeking a declaration that the HIC policy was void from the start, and that HIC need not defend or indemnify Maxi's and Arbitman in the Hopson Lawsuit. (ECF No. 1) Defendants answered the complaint: Maxi's and Arbitman on February 11, 2026; Hopson on February 23; and Donlan on February 25. (ECF Nos. 16–18).

Also on February 25, Maxi's and Arbitman brought this third-party complaint against Saracino and Meehan for fraud, seeking "full indemnification and/or contribution for all losses, damages, fees, attorneys' fees and costs" related to the Hopson Lawsuit and HIC Lawsuit. (ECF No. 19). Saracino and Meehan moved to dismiss the third-party complaint on April 17, and Maxi's and Arbitman responded on May 1. (ECF Nos. 31, 32).

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must sufficiently plead facts that, if accepted as true and interpreted in the light most favorable to the plaintiff, "state a claim to relief that is plausible on its face." *McTernan v. City of York*, 577 F. 3d 521, 526, 530 (3d. Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Likewise, the tenet that a court must accept as true all the allegations in a complaint is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678. Pleadings that offer only

"threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

As required by Fed R. Civ. P. 9(b), a heightened pleading standard applies in fraud cases, "requiring that facts be pleaded with particularity." *Kanter v. Barella*, 489 F.3d 170, 175 (3d Cir. 2007), *overruled on other grounds by In re Cognizant Tech. Sols. Corp. Derivative Litig.*, 101 F.4th 250 (3d Cir. 2024). "At a minimum, plaintiffs should be able to name the "who, what, when, where and how" of the fraud." *State Farm Mut. Auto. Ins. Co. v. Stavropolskiy*, 2016 WL 627257, at *2 (E.D. Pa. Feb. 17, 2016) (*citing In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997)). "Rule 9(b) is not satisfied where a plaintiff . . . merely lumps the who, what, when, and where together." *Riachi v. Prometheus Grp.*, 822 F. App'x 138, 142 (3d Cir. 2020). But "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed R. Civ. P. 9(b).

## III. DISCUSSION

### A. Third-Party Plaintiffs State a Valid Claim for Fraud.

Third-Party Defendants argue that "the fraud claims against Saracino and the Meehan Agency do not state with particularity or provide any precision or substantiation what Saracino and the Meehan Agency did that was fraudulent." (ECF No. 31 at 13). The Court disagrees.

In Pennsylvania, a fraudulent misrepresentation claim has six elements:

> "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."

*Overall v. Univ. of Pa.*, 412 F.3d 492, 498 (3d Cir. 2005). Third-Party Plaintiffs have pled each element with the particularity required by Fed. R. Civ. P. 9(b).

**1. Representations**

Third-Party Plaintiffs have identified three representations that provide the basis for a fraudulent representation claim. (ECF No. 19 ¶¶ 60, 64, 65). They have also pled with particularity *who* made the representations (Saracino); *what* they said (that Maxi's operated from noon to midnight); *when* they occurred (March 28, April 4, and April 5, 2023); and *where and how* they were made (in emails and the insurance application). (*Id.*). At this stage, Third-Party Plaintiffs have adequately pled this element.

**2. Materiality**

Third-Party Plaintiffs have alleged that Saracino's representations were material. (*Id.* ¶¶ 39, 67). Specifically, they have alleged that "[i]f [Maxi's, through Saracino] had accurately applied for coverage with a closing time of 2:00 AM, HIC would not have issued" the HIC Policy. (*Id.* ¶ 39). Viewing this allegation in a light most favorable to Third-Party Plaintiffs as the non-moving party, this adequately pleads that Saracino's representations materially affected HIC's willingness to cover Maxi's.

**3. False with Knowledge of Falsity**

Third-Party Plaintiffs have alleged that Saracino's representations were false, insofar as Maxi's operated until 2 a.m. at least two and up to seven nights a week. (*Id.* ¶¶ 42, 43, 46–52, 54, 68). Third-Party Plaintiffs have also alleged that Saracino and/or Meehan made the representations "with knowledge of their falsity," *id.* ¶ 72, which suffices under Fed R. Civ. P. 9(b)'s instruction that "knowledge . . . may be alleged generally." *See Nat'l Fire Ins. Co. of Hartford v. Johnson Controls Fire Prot. LP*, 2019 WL 4014405, at *6 (E.D. Pa. Aug. 23, 2019) (refusing to dismiss fraud claim for lack of specificity where complaint alleged that Defendant "knew of its misrepresentations, made the

misrepresentations without knowledge as to their truth or falsity, or . . . should have known of the falsity of the misrepresentations.”).

**4. Intent to Mislead**

Likewise, Third-Party Plaintiffs have alleged that Saracino and/or Meehan made the representations “with the intent to deceive.” (ECF No. 19 ¶ 72). Fed R. Civ. P. 9(b) also instructs that “intent . . . may be alleged generally,” and Third-Party Plaintiffs have successfully done so here. *See Fleetwood Servs., LLC v. Complete Bus. Sols. Grp.*, 374 F. Supp. 3d 361, 376 (E.D. Pa. 2019) (refusing to dismiss fraud claim for lack of specificity where complaint alleged that Defendant had “intent to defraud.”).

**5. Reliance on Representation**

Third-Party Plaintiffs have alleged that HIC relied on Saracino’s representation when it issued the HIC Policy. (*Id.* ¶¶ 69, 72). Third-Party Plaintiffs have also alleged that HIC asked Saracino to confirm that Maxi’s operated from noon to midnight, only issuing the policy once Saracino did so. (*Id.* ¶¶ 63–66). Third-Party Plaintiffs have adequately pled this element.

**6. Representation Proximately Caused Injury**

Third-Party Plaintiffs have alleged that Saracino’s representations proximately caused their injury—here, the potential invalidity of the HIC Policy and their corresponding “depriv[ation] of a defense and indemnification by HIC in the Hopson Lawsuit . . . the cost of defending the same and . . . personal liability for the payment of any judgment that may [be] entered in favor of Hopson.” (ECF No. 19 ¶¶ 73, 74). Third-Party Plaintiffs have adequately pled this element.

In sum, Third-Party Plaintiffs have adequately pled each element of their claim for fraudulent representation with the particularity required by Fed. R. Civ. P. 9(b).

## IV. CONCLUSION

For the foregoing reasons, Third-Party Defendants' motion to dismiss is **DENIED**. An appropriate order follows.

**IT IS SO ORDERED.**

BY THE COURT:

*/s/ John Milton Younge*

**Judge John Milton Younge**